ORIGINAL

FILED IN CHAMBERS
U.S.D.C. Atlanta

FEB 26 2016

James N. HATTEN, Clerk
By: _____ Deputy Clerk

# United States District Court
## NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA

v.

PAUL VICTOR WILSON, a/k/a Ivory Roberson

**CRIMINAL COMPLAINT**
Case Number: 1:16-MJ-166

**UNDER SEAL**

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief.

> Beginning on a date unknown, but at least on or about February 10, 2016 in Clayton County, in the Northern District of Georgia, and elsewhere, the defendant did, conspire to violate Title 21, United States Code, Section 841(a)(1), that is, conspired to distribute, and to possess with intent to distribute, at least 5 kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, and did conspire to violate Title 21, United States Code, Section 952(a), that is, to import a controlled substance, said substance involving at least 5 kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, from a place outside the United States, that is, Jamaica,

in violation of Title 21, United States Code, Section(s) 846, 841(a), 841(b)(1)(A)(ii), 952(a), 960(a)(1) and 960(b)(1)(B), and Title 18, United States Code, Section 2 (aiding and abetting).

I further state that I am a(n) Special Agent and that this complaint is based on the following facts:

*PLEASE SEE ATTACHED AFFIDAVIT*

Continued on the attached sheet and made a part hereof.   Yes

_____
Signature of Complainant
SA Bryan Haley, DHS/HSI

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it.  Sworn to before me, and subscribed in my presence

February 26, 2016                              at   Atlanta, Georgia
Date                                                      City and State

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer               Signature of Judicial Officer
AUSA Laurel R. Boatright

# AFFIDAVIT

I, Bryan M. Haley, a Special Agent for Homeland Security Investigations ("HSI") within the Department of Homeland Security, being under affirmation, hereby depose and state that:

## A. Introduction

1. I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. This affidavit is made in support of a criminal complaint against Paul Victor WILSON, a/k/a Ivory Benvenuto Roberson, for conspiring, in the Northern District of Georgia, and elsewhere, to distribute, and to possess with intent to distribute, at least 5 kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, and conspiring to import a controlled substance, said substance involving at least 5 kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, from a place outside the United States, that is, Jamaica, in violation of Title 21, United States Code, Sections 846, 841(a), 841(b)(1)(A)(ii), 952(a), 960(a)(1) and 960(b)(1)(B), and Title 18, United States Code, Section 2 (aiding and abetting). This affidavit is submitted solely to establish probable cause for the requested complaint and does not purport to set forth all of my investigation into or knowledge of this matter.

## B. Training and Experience

3. I am a Special Agent ("SA") with the United States Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI"). I have been employed by HSI since May of 2006. I am

currently assigned to the Office of the Special Agent in Charge, Atlanta, Georgia, Hartsfield International Airport Group. I am a graduate of the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia, where I received training in violations of criminal and immigration law as well the preparation and execution of search and arrest warrants.

4. During the course of my employment with HSI, I have participated in the investigation of numerous cases relating to narcotics trafficking, human smuggling, money laundering, counterfeit goods, document fraud, and commercial fraud. My training and experience in narcotics enforcement has included the identification of narcotics, including cocaine, methamphetamine, heroin, opium, MDMA (ecstasy), and marijuana, and the investigation of persons in possession of narcotics for purposes of sales and transportation, as well as persons conspiring to transport and sell narcotics. I speak regularly with narcotics investigators at the federal, state and local level, sellers of narcotics, and informants regarding the manner in which narcotics are manufactured, packaged for sale, and in regard to the manner in which sellers of narcotics store, conceal, sell and transport narcotics.

5. As an HSI special agent, I investigate criminal violations of the federal drug laws and related offenses, including, but not limited to, violations of Title 31, United States Code, Section 5332; Title 21, United States Code, Sections 841, 843, 846, 848, 856, 952, 960 and 963; and Title 18, United States Code, Sections 1952, 1956, and 1957.

6. I know that Jamaica is a source country for the importation of illegal drugs into the United States. In support of the investigations I have been involved with, I have reviewed travel records, bank records, telephone toll records, conducted physical surveillance, electronic surveillance, and undercover operations, among other investigative techniques, to determine the criminal activity of the various members of the DTOs. I have also been involved in the execution of drug search warrants, drug trafficking arrest warrants and interviews

involving drug defendants and witnesses knowledgeable in drug trafficking and money laundering.

7. I also have received specialized training pertaining to money laundering investigations, drug trafficking, drug trafficking techniques and the exploitation of telephones and other communication devices as investigative techniques. Based upon my training and experience, including interviews conducted with defendants, sources, and other witnesses to, or participants in, drug-trafficking activity, I am familiar with the ways in which drug traffickers conduct their illegal business, including the various means and methods by which drug traffickers (a) import and distribute drugs; (b) use cellular telephones to facilitate drug activity; and (c) use numerical codes and code words to conduct their transactions. Based on my involvement in complex DTO investigations, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed and the methods of payment for such drugs.

C. SOURCES OF INFORMATION

8. I make this affidavit based upon personal knowledge derived from my participation in this investigation and information I have learned from discussions with other federal officers or review of reports, sworn statements, or other documents prepared by those officers. Because this affidavit was prepared for the limited purpose of supporting a complaint against the individual listed herein, I have not included each and every fact known about this investigation.

D. STATEMENT OF PROBABLE CAUSE

9. On February 10, 2016, CBP detained Kaprice Green and Janai Cavitt after they arrived at the Hartsfield International Airport from Montego Bay, Jamaica. Customs and Border Protection had previously placed a 1-day lookout targeting Green and Cavitt as

being potential narcotics couriers.

10. Upon arrival in Atlanta, Green and Cavitt, along with their luggage, were met at immigration at which time they were escorted to CBP secondary and CBP Officer Hamilton began to interview Cavitt. Cavitt was asked routine questions by CBP Officer Hamilton to determine the reason for her travel. During the interview, CBP Officer Hamilton obtained a binding declaration from Cavitt, whereby Cavitt claimed ownership of her bag and all of the contents inside. Cavitt stated she and her best friend were traveling back from Montego Bay, Jamaica for vacation and that they were traveling to Cincinnati, Ohio. During the examination of Cavitt's grey suitcase, CBP Officer Hamilton felt a false wall in the lining of the bag. A flat object was discovered in the false lining wrapped in duct tape. The duct tape was pierced and a white powdery substance was discovered. The white powdery substance field tested positive for the presence of cocaine.

11. CBP Officer Alfano interviewed Kaprice Green asking her routine questions to determine the reason for her travel. Green stated she and Cavitt went to Jamaica for four days for vacation and were now returning home to Cincinnati. During the interview, CBP Officer Hammond obtained a binding declaration from Green, whereby Green claimed ownership of her bag and all of the contents inside. During the examination of Green's purple suitcase, CBP Alfano emptied all of the contents from Green's bag and CBP Officer Semple, who was also present during the interview, noted a false wall in the lining of the bag. A flat object was discovered in the false lining wrapped in duct tape. The duct tape was pierced and a white powdery substance was discovered. The white powdery substance field tested positive for the presence of cocaine.

12. As a result of the positive field tests, both Green and Cavitt were taken into custody by CBP and the ICE SAC Atlanta Hartsfield Group was contacted. Agents read both Cavitt and Green their

Miranda rights and both Cavitt and Green waived their rights and agreed to give a statement.

13. Cavitt admitted she was going to be paid $5,000 to bring cocaine back into the United States and deliver the cocaine, which was concealed in her bag, to a female named "Rose Marie" and a male Jamaican named "Walt." Cavitt stated she believed she was only bringing 500 grams of cocaine into the United States.

14. Green also admitted she was to be paid $5000 to bring cocaine back into the United States and deliver the cocaine concealed in her bag to a female named "Rose Marie" and a male Jamaican named "Walt." Green also stated she believed she was only bringing 500 grams of cocaine into the United States.

15. Both Green and Cavitt agreed to cooperate with the government's investigation. Both Green and Cavitt stated that "Rose Marie" and "Walt" were waiting for them to arrive from Atlanta into the Cincinnati Airport onboard their connecting Delta Airlines flight 0709. Green and Cavitt stated that "Rose Marie" and "Walt" were to meet them at the airport in Cincinnati, at which time they would pay them and take the bags containing the cocaine.

16. Using Cavitt's cellular phone (513)-693-7196, SA Rutherford had Cavitt text "Rose Marie" at approximately 9:23 p.m. EST when Delta Airlines flight 0709 landed at the Cincinnati Airport indicating both Cavitt and Green had arrived safely. "Rose Marie" texted Cavitt, using cellular phone (513) 377-5710, indicating she and WALT LNU were waiting for them to exit the airport.

17. Agents and officers with the RAC Cincinnati Office stationed at the Cincinnati airport observed a male and female (later identified as Roelisha Housley and Walter Parker) arrive in Cavitt's black Jeep Commander Sport Utility Vehicle at the Delta Terminal of the airport. A description of Cavitt's Jeep Commander, with black tinted

windows and no driver's side mirror, was given to law enforcement.

18. Cincinnati Airport Police conducted a traffic stop on the Jeep Commander and identified the two occupants inside the vehicle as: Roelisha Housley and Walter Lee Parker. ICE SA Alexander Cook interviewed both Housley and Parker.

19. During the interview of Housley and Parker, Parker admitted to law enforcement that he was loaning Housley a bulk sum of US currency to pay for two females arriving from Atlanta for the white powder. Housley admitted to law enforcement that she had couriered a similar narcotics load a couple of weeks earlier bringing either cocaine, heroin, or pills into the United States from Jamaica. Housley admitted she was paid $4,500 by Parker's nephew in Jamaica to courier the narcotics load.

20. Parker admitted to law enforcement that his nephew in Jamaica had organized the trips for the two females from Atlanta to deliver the white powder. Parker had a photo of both Cavitt and Green in his cellular phone that had been taken by Housley when Cavitt and Green were sent from Cincinnati to Jamaica.

21. Inside the cab of Cavitt's vehicle, approximately $3,645 in U.S. currency was found by law enforcement.

22. Housley and Parker are both United States citizens, residing in the Cincinnati, Ohio area.

23. The next day, on February 11, 2016, after issuance of a federal complaint charging Cavitt and Green with a drug trafficking conspiracy, Cavitt and Green were released on bond and scheduled to return to Ohio the next morning.

24. At approximately 11:44 p.m. on February 11, 2016, agents received a phone call from Cavitt stating that her sister (Jasmine Cavitt) had

been receiving several threatening phone calls and text messages that evening from a man and a woman who Cavitt's sister did not recognize. The unknown man had a Jamaican accent and identified himself as "Otis." Otis used Cingular Wireless number-954-240-8402 to make the call. During this phone call, Otis told Jasmine Cavitt that he wanted to know where Janai was and that he was not "playing games." He further stated that he knew where everybody lived at and provided Janai Cavitt's prior address. He stated he was Jamaican and was currently in Kentucky where he believed Janai Cavitt and Jasmine Cavitt were currently staying. He then sent several texts messages to Jasmine Cavitt showing a bleeding finger with what appeared to be fingers cut off and stating that "People who thief [sic] lose body parts." Jasmine Cavitt continued to receive threatening text messages from 954-240-8402 throughout the morning of February 12, 2016, relating to the location of Cavitt and Green and the missing cocaine load.

25. Because of the exigent circumstances presented by the threat to Jasmine Cavitt and Janai Cavitt, Cingular/AT&T began voluntarily providing law enforcement with GPS geolocation data and some cell site location data for the 954-240-8402 at approximately 1:30 a.m. on February 12, 2016. At approximately 1:52 a.m., on February 12, 2016, pursuant to 18 U.S.C. § 3125, Deputy Assistant Attorney General Paul M. O'Brien authorized an emergency pen register with prospective cell site information for the phone number that had been used to issue the threats.

26. According to geolocation data, 954-240-8402 was being used in Atlanta, Georgia, from early morning in the general vicinity of the airport, on February 12, 2016, but was being used in the Westin, Florida, area as of mid-afternoon on February 12, 2016.

27. HSI agents in Florida obtained search warrants to use a cell site simulator and located 954-240-8402 in the area of two apartment units in the San Michel apartment complex at 1337 St. Tropez Circle,

Westin, Florida: Apartment #202 and Apartment #203. Agents began conducting physical surveillance of the apartments at approximately 6:00 pm on February 12, 2016. Upon arrival at the complex, agents observed an Enterprise rental vehicle, with a California tag, parked in the space for Apt. #203. Agents began to knock on the doors of Apt. #202 and 203. No one answered the door at #202 and #203. Agents maintained physical surveillance until approximately 7:00 am the following morning of February 13, 2016. When agents stopped conducting physical surveillance, the Enterprise rental vehicle was still parked in the space for Apt. #203.

28. Mid-afternoon on February 13, 2016, agents again began conducting physical surveillance of the apartments. At around 9:00 pm that evening, agents observed the same Enterprise rental vehicle pull into the apartment complex and then turn around and begin to exit the apartment complex. When the Enterprise rental vehicle came to a stop, an agent initiated the blue lights of his vehicle and approached the Enterprise rental vehicle. The agent asked the occupant of the vehicle whether he lived in the apartment complex and whether he knew the identity of the person living at Apt. #202. The individual (later identified as Paul Victor WILSON) at that time identified himself as Ivory Roberson and presented a driver's license in that name with a photograph. The agent took a photograph of WILSON's driver's license. At that time, the agent noticed WILSON had a slight Jamaican accent that he appeared to be trying to hide. WILSON was not detained at that time.

29. On February 23, 2016, Roelisha Housley was arrested on a federal complaint out of the Northern District of Georgia.

30. On February 24, 2016, Walter Parker was arrested on a federal complaint out of the Northern District of Georgia. Parker admitted that he had met with an individual known as "Nephew" to coordinate payment for the drug shipment that Cavitt and Green would be transporting back from Jamaica. Parker said "Nephew"

lived in Florida and had a residence in Atlanta. Parker said "Nephew" used phone number 954-240-8402. Parker was shown the photograph of the driver's license in the name of Ivory Roberson and identified the person in the photograph as the individual Parker knew as "Nephew." Parker said that he knew that "Nephew's" name was Ivory Roberson because Parker had received a wire transfer of money relating to the Cavitt/Green drug trip in the name of Ivory Roberson. Parker also informed agents that "Nephew" had recently changed his phone number and provided agents with the new phone number "Nephew" was using.

31. On February 25, 2016, agents conducted additional electronic and physical surveillance of that new phone and the San Michel apartment complex. Agents observed the individual who had previously identified himself as Ivory Roberson leaving the apartment complex.

32. Agents arrested the individual. After being advised of, and waiving, his Miranda rights, the individual admitted that Ivory Roberson was an alias and that his actual name was Paul Victor WILSON. WILSON stated that he worked for a Jamaican source of supply (SOS). WILSON stated that he had earlier traveled to Ohio at the SOS's request to coordinate the arrival of the drug couriers and their payment. WILSON stated that Parker had wired money to WILSON so that WILSON could pay for a plane ticket to meet with Parker in Cincinnati, Ohio, approximately one week prior to February 10, 2016. WILSON stated that he had also sent a wire transfer to Parker to pay for expenses related to the drug courier trip. WILSON admitted that 954-240-8402 was his phone number but denied that he had sent the threatening text messages. WILSON claimed that he had given the 954-240-8402 phone to a person known to WILSON only as "W;" that "W" had met and spent a night with WILSON in Florida at the SOS's direction; and that "W" had traveled to Atlanta (which WILSON did as well) to attempt to meet with or ascertain the whereabouts of Cavitt and Green in Atlanta around February 10-12, 2016. WILSON

claimed he later took the 954-240-8402 back from "W," destroyed the phone's SIM card, and got a new phone number.

## D. CONCLUSION

33. Based upon the aforementioned facts, I assert there is probable cause to believe that, beginning on or about February 10, 2016, Paul Victor WILSON, a/k/a Ivory Roberson, in the Northern District of Georgia, and elsewhere, did conspire to violate Title 21, United States Code, Section 841(a)(1), that is, conspired to distribute, and to possess with intent to distribute, at least 5 kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, and did conspire to violate Title 21, United States Code, Section 952(a), that is, to import a controlled substance, said substance involving at least 5 kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, from a place outside the United States, that is, Jamaica, in violation of Title 21, United States Code, Sections 846, 841(a), 841(b)(1)(A)(ii), 952(a), 960(a)(1) and 960(b)(1)(B), and Title 18, United States Code, Section 2 (aiding and abetting).

34. IT IS FURTHER REQUESTED that this complaint, affidavit, and any corresponding documents, be SEALED until further order of the Court, as they reveal an ongoing investigation, to avoid premature disclosure of the investigation, guard against flight, and better ensure the safety of agents and others, except that working copies may be served on special agents and other investigative and law enforcement officers of ICE/DHS, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, and as necessary to effectuate the Court's order.

**FURTHER YOUR AFFIANT SAYETH NOT**